UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HARRIET HENNEBERGER,

                Plaintiff,

v.                                                            07-CV-804(Sr)

COHEN & SLAMOWITZ, LLP,

                Defendant.
_____

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #23.

Currently before the Court is defendant's motion for summary judgment dismissing the complaint, which alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Dkt. #24. For the following reasons, defendant's motion is granted in part and denied in part.

## BACKGROUND

By letter dated October 11, 2006, the Law Offices of Cohen & Slamowitz, LLP advised plaintiff that her Action Card account had been referred to them by Midland Funding LLC for collection of $1,951.78. Dkt. #24-6, p.2. A Summons and Complaint dated November 2, 2006 was filed with the City Court of North Tonawanda.

Dkt. #24-4, pp.35-36.  Plaintiff executed a forbearance agreement and stipulation of settlement on December 19, 2006.  Dkt. #24-6, p.4.  The agreement provided that, in the event of default, Midland Funding LLC would afford plaintiff notice and ten days to cure such default but would then be permitted to enter judgement against plaintiff.  Dkt. #24-6, p.4.  By letter dated January 19, 2007, Midland Funding LLC advised that they had not received payment due and would exercise its rights and remedies under the forbearance agreement if payment was not received within ten days.  Dkt. #24-6, p.7.  Judgment was entered in the City Court of North Tonawanda in the amount of $1,671.43 on July 19, 2007.  Dkt. #24-6, p.9.

On August 6, 2007, defendant served an Information Subpoena and Restraining Notice on Manufacturers and Traders Trust Company ("M&T").  Dkt. #24-6, p.11.  By Notice dated August 8, 2007, defendant advised plaintiff that:

> money or property belonging to you may have been taken or held in order to satisfy judgments.  State and federal laws prevent certain money or property from being taken to satisfy judgments or orders.  Such money or property is said to be "exempt."  The following is a partial list of money which may be exempt: Supplemental Security Income (SSI), Social Security, Public Assistance (Welfare), Alimony or Child Support, Unemployment benefits, disability benefits, workers' compensation benefits, public or private pensions, and veterans benefits.  If you think that any of your money that has been taken or held is exempt, you must act promptly because the money may be applied to the judgment.  If you claim that any of your money that has been taken or held is exempt, you may contact the person sending this notice.
>
> Also, you may consult an attorney, including legal aid if you qualify. The law (New York Civil Practice Law and Rules, Article 4 and Sections Fifty-Two Hundred Thirty-Nine and

>Fifty-Two Hundred Forty) provides a procedure for
>determination of a claim of exemption.

Dkt. #24-6, p.14. By letter dated August 9, 2007, M&T Bank advised plaintiff that M&T Bank was required to comply with the legal provisions of the Restraining Notice and freeze plaintiff's account for the amount of the judgment. Dkt. #24-4, p.4.

On August 13, 2007, plaintiff provided defendant with three months of bank statements and letters verifying the source of deposits into her account. Dkt. #24-4, pp.55-66. By Notice dated August 15, 2007, defendant authorized M&T to release the restraint on plaintiff's bank account. Dkt. #24-6, p.16.

By letter dated August 17, 2007, plaintiff advised defendant that its employee, Marcos Smith

>violated the FDCPA by intentionally placing a freeze on my bank account even though he knew I am a senior citizen and receive social security income which is protected from seizure.
>
>This egregious action left me unable to fill my prescription medication and placed my health at risk. Along with the emotional turmoil of watching all my checks get returned, I have been forced to pay my bank $110 in filing fees and $160 in returned check charges (not including the fees to the respective company [sic] whose checks are being returned). . . . In addition, I am frustrated because I made attempts to resolve this bill in a timely fashion and had sent in a $100 payment on this account on 8/3/07. To date, no one has found the payment and Marcos refused to research where the payment had gone. Instead, he chose this nasty and inappropriate collection action. In conversation with me, he stated that he knew that my income was not able to be touched, yet he still filed the paperwork.

Dkt. #24-4, p.56.

> In her verified complaint, plaintiff alleges:
>
>> That on or about December 12, 2006, Plaintiff received a telephone call from Marcos Smith who identified himself as an employee of the Defendant. Mr. Smith stated that Plaintiff was going to be sued if she didn't pay the subject debt and that Defendant would take her entire bank account. Plaintiff responded that her only income was her Social Security Benefits and pension benefits.
>
> Dkt. #1, ¶ 14. Plaintiff further alleges:
>
>> That between December of 2006 and August of 2007, Mr. Smith continued to call at least once per month, often more frequently. During four or five of these telephone calls, Mr. Smith advised Plaintiff that they would freeze her bank account. Each time, when Plaintiff reminded Mr. Smith that the funds in her bank account consisted of exempt Social Security and pension payments, Mr. Smith would respond by telling Plaintiff that they would freeze her account and take the funds away.
>
> Dkt. #1, ¶ 15.

During her deposition, plaintiff testified that defendant "called me and told me they were going to . . . take the money out of my bank account and they were going to . . . take everything out that I owed them right then and there," but she did not recall when that conversation occurred. Dkt. #24-5, pp.24-25. Plaintiff subsequently denied any recollection of speaking with anybody in defendant's employ or with Marcos Smith in particular. Dkt. #24-5, pp.61-63.

In response to defendant's motion for summary judgment, plaintiff affirms that she was extremely nervous and intimidated during her deposition "and quite honestly found myself unable to recall events due to my anxiety." Dkt. #31-6, ¶ 3.

Plaintiff further affirmed that her complaint accurately described the history of her dealings with the defendant and reiterated that:

> between December of 2006 and August of 2007, the Defendant called me on multiple occasions to demand payment on a debt that I owed. During almost every conversation that I had with them, the Defendant threatened to restrain my bank account if I did not make the payments that they demanded. During these calls, I repeatedly informed the Defendant that my bank account consisted exclusively of funds I received from Social Security and my deceased husband's military pension. I would then state to the Defendant that it was my understanding that they could not take those funds. The Defendant . . . repeatedly stated to me that they would take my funds away.

Dkt. #31-6, ¶ ¶ 9 & 11.

## DISCUSSION AND ANALYSIS

Summary Judgment Standard

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## 42 U.S.C. § 407(a)

42 U.S.C. § 407(a) provides that

> The right of any person to any future payment under this chapter [Social Security] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of bankruptcy or insolvency law.

"Courts have uniformly recognized that the purpose of section 407(a) is to protect social

security beneficiaries and their dependents from the claims of creditors." *Fetterusso v. State of New York,* 898 F.2d 322, 326 (2d Cir. 1990).

Plaintiff's Deposition Testimony

Defendant argues that plaintiff's inability to recall her conversations with defendant's employee at her deposition demonstrates an inability to substantiate her claim that defendant's employees threatened to restrain and seize exempt resources from her bank account. Dkt. #24-8, p.15. In support of this argument, defendant relies upon case law holding that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). Dkt. #32, p.5.

This rule is applied much more narrowly than defendant suggests. As *Hayes* itself continued, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Id.* In other words, "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's] own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). As stated by the United States Supreme Court, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own

previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 806 (1999).

In the instant case, plaintiff's affidavit in opposition to defendant's motion for summary judgment was neither the first nor the only assertion of misconduct by defendant's employees. By letter dated August 17, 2007, plaintiff advised defendant that it's employee, Marcos Smith "violated the FDCPA by intentionally placing a freeze on my bank account even though he knew I am a senior citizen and receive social security income which is protected from seizure." Dkt. #24-4, p.56. In her verified complaint, plaintiff alleges that on December 12, 2006, Mr. Smith informed her that defendant "would take her entire bank account" even though plaintiff informed him that "her only income was her Social Security Benefits and pension benefits." Dkt. #1, ¶ 14. Plaintiff's verified complaint also alleges that on four or five other occasions, Mr. Smith advised plaintiff that defendant would freeze her bank account and take her funds even though plaintiff reminded him that the funds in her bank account consisted of exempt Social Security and pension payments. Dkt. #1, ¶ 15. Although plaintiff did not recall many details of her interaction with defendant during her deposition, she did testify that defendant "called me and told me they were going to . . . take the money out of my bank account and they were going to . . . take everything out that I owed right then and there." Dkt. #24-5, pp.24-25. Thus, plaintiff's affidavit in response to defendant's motion for summary judgment does not attempt to create a genuine issue of material fact by contradicting her deposition testimony or inserting a previously undisclosed factual allegation into the lawsuit.

Telephone Calls

Plaintiff argues that defendant violated 15 U.S.C. § 1692d by threatening to seize her exempt Social Security and pension income. Dkt. #31, p.7. 15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Accepting, for purposes of this motion, plaintiff's allegation that defendant's employee threatened to seize resources which were exempt from collection, the Court finds a question of fact as to whether such conduct was harassing, oppressive or abusive.

Plaintiff argues that defendant violated 15 U.S.C. § 1692e by representing that it could or would seize plaintiff's exempt social security funds. Dkt. #31, p.8. 15 U.S.C. § 1692e generally provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute specifically prohibits the "representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). The statute further specifies that a "threat to take any action that cannot legally be taken or that is not intended to be taken" is a violation of the FDCPA. 15 U.S.C. § 1692e(5). Accepting, for purposes of this motion, plaintiff's allegation that defendant's employee threatened to seize resources which could not legally be seized, summary judgment in favor of defendant is inappropriate under this provision of the FDCPA as well.

Although plaintiff does not expressly rely upon 15 U.S.C. § 1692e(10) in opposition to defendant's motion for summary judgment, she does claim violation of this statute in her complaint and in response to defendant's first set of interrogatories. Dkt. #1, ¶ 25; Dkt. #31-5, p.31. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Accepting, for purposes of this motion, plaintiff's allegation that defendant's employee falsely represented that plaintiff's exempt resources could be seized, summary judgment in favor of defendant would also be inappropriate under this provision of the FDCPA.

Although plaintiff does not expressly rely upon 15 U.S.C. § 1692f in opposition to defendant's motion for summary judgment, she does claim violation of this statute in her complaint and in response to defendant's first set of interrogatories. Dkt. #1, ¶ 25; Dkt. #31-5, p.31. 15 U.S.C. § 1692f generally provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(6)(c) specifically prohibits threatening to take any nonjudicial action to effect dispossession of property if the property is exempt by law from such dispossession. Accepting, for purposes of this motion, plaintiff's allegation that defendant's employee threatened to seize resources which could not legally be seized, summary judgment in favor of defendant is also inappropriate under this provision of the FDCPA.

Restraint of Bank Account

Defendant argues that it cannot be held liable under the FDCPA for issuing the Information Subpoena and Restraining Notice on M&T because it had the legal right to do so after it obtained a judgment against plaintiff. Dkt. #24-8, p.12. Defendant asserts that it was not required to rely upon plaintiff's representations as to the source of funds contained within her bank account, but was entitled to utilize the enforcement procedures provided judgment creditors under New York law to ascertain such information. Dkt. #24-8, p.21. In any event, defendant argues that its restraining notice expressly excluded restraint of exempt resources. Dkt. #24-8, p.21.

Plaintiff responds that defendant's restraint of her bank account despite her verbal statements to defendant's employee, on multiple occasions, that her sole source of income consisted of exempt resources, including social security benefits, is a violation of 15 U.S.C. § 1692f. Dkt. #31, p.10. Plaintiff argues that:

> despite the Defendant's clever efforts to restrict the restraining notice so as to restrain only non-exempt funds, CPLR § 5222(b) mandated that Plaintiff's bank restrain all of the Plaintiff's money. The statute did not allow the recipient of a restraining notice to determine which assets were exempt and, then, to only restrain non-exempt assets. By law, the Defendant knew or should have known that upon receipt of the restraining notice, Plaintiff's bank would be required to restrain all of her assets, even those that were otherwise exempt by law. This was unconscionable given the fact that the Plaintiff had been telling them for months that the income consisted exclusively of exempt funds.

Dkt. #31, p.12. Plaintiff suggests that defendant had an obligation to seek verification of plaintiff's claim of exempt resources before restraining her bank account. Dkt. #31, p.10.

-11-

Defendant's attempt to impose upon the bank an obligation to assess the origin of the funds contained in the account to be restrained is unavailing. *See Huggins v. Pataki*, No. 01-CV-3016, 2002 WL 1732804, at *4 (E.D.N.Y. July 11, 2002) (declining plaintiff's request to impose burden on banks to determine whether funds are exempt). Although the Court in *Mayers v. New York Community Bancorp, Inc.*, declined to dismiss plaintiff's due process challenge to C.P.L.R. § 5222, which argued that technological advances permitting a bank to readily identify certain exempt funds has altered the analysis with respect to the fair balance between competing interests of creditors, debtors and the state with respect to post-judgment enforcement mechanisms, this Court finds that decision insufficient to impose a duty of care upon the bank to ascertain the existence of exempt funds in an account before complying with a restraining notice. No. CV-03-5837, 2005 WL 2105810, at *13-14 (E.D.N.Y. Aug. 31, 2005). As a result, the Court finds defendant's attempt to restrict the restraint of plaintiff's bank account insufficient to demonstrate entitlement to the *bona fide* error defense set forth in 15 U.S.C. § 1692k(c).[1]

However, the Court finds that it is neither unfair nor unconscionable for defendant to utilize New York's post-judgment remedies to attempt to enforce its judgment. New York's post-judgment remedies permit judgment creditors to issue

---

[1] 15 U.S.C. § 1692k(c) provides that
>A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

restraining notices any time after judgment is entered. N.Y. C.P.L.R. § 5222. The Court of Appeals for the Second Circuit has determined that New York's post-judgment remedies appropriately balance the competing interests of creditors, debtors and the state, thereby satisfying due process. *McCahey v. L.P. Investors*, 774 F.2d 543, 548-49 (2nd Cir. 1985). The Court of Appeals specifically rejected plaintiff's argument that notice and a hearing be afforded before a bank account is restrained, stating

> Even if the debtor asserts an exemption to the creditor before seizure, the creditor still has a right to have that assertion adjudicated. Moreover, the debtor is in the best position to provide evidence of the exemption and may legitimately be required to carry the burden of proving its existence.

*Id.* at 550.

Similarly, in *Shrestha v. State Credit Adjustment Bureau, Inc.*, the district court granted defendant's motion for summary judgment with respect to plaintiff's claim that defendant's restraint of his bank account was improper because defendant was aware that plaintiff's financial circumstances entitled him to an exemption, stating:

> Defendant is not required to rely on a debtor's assertion of his financial status, but rather is entitled to a hearing. Defendant did not know what property was exempt until plaintiff followed the statutory procedures to claim it.

117 F. Supp.2d 142, 145 (D. Conn. 2000).

This conclusion is supported by the analysis set forth by the Court of Appeals for the Seventh Circuit in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473-75 (7th Cir. 2007). In *Beler*, the Court of Appeals affirmed the district

court's award of summary judgment to the defendant debt collector with respect to plaintiff's claim pursuant to 16 U.S.C. § 1692f following defendant's service of a Citation to Discover Assets upon plaintiff's bank account, freezing that account for 23 days until plaintiff demonstrated that the account contained social security disability payments and defendant dismissed the Citation. 480 F.3d at 472. The Court of Appeals declined

> to declare, as a matter of federal common law, that a pre-citation hearing is essential to a "fair" debt collection, lest exempt asset be immobilized for even a brief period, even though a freeze plus a post-citation hearing complies with state law. Whatever may be said for or against pre-citation hearings as a matter of wise public policy, such a rule should be adopted (if at all) through the administrative process or a statutory amendment rather than a judicial definition of the phrase "unfair or unconscionable." The legislative and administrative processes can take full account of all affected interests in a way that judicial case-by-case decision-making cannot.

*Id.* at 474.

Similarly, in *Wetherelt v. Larsen Law Firm, PLLC*, although plaintiff's answer to the underlying complaint seeking to recover unpaid credit card debt stated she was unable to pay the debt because her only source of income was social security, the district court dismissed plaintiff's subsequent complaint pursuant to 16 U.S.C. § 1692f, stating:

> Defendant was not required to rely on [plaintiff's] unsubstantiated statements regarding the source of her income. Defendant could have asked [plaintiff] to verify the source of her income by submitting a sworn affidavit or copies of her bank statements. Defendant even could have attempted to obtain a debtor's exam before seeking a writ of execution. The issue here, however, is not what Defendant could have done; it is whether a reasonable jury could find Defendant acted unfairly or unconscionably. It could not. Defendant followed the procedures provided for under

>Montana law for obtaining a writ of execution. A debt
>collector who, faced with unsubstantiated claims regarding
>exempt funds, avails itself of lawful procedures to verify the
>status of those funds does not act unfairly or
>unconscionably.

577 F. Supp.2d 1128, 1133 (D. Mt. 2008) (internal citation omitted). As the issuance of the restraining notice in the instant case was proper under New York's statutory scheme for post-judgment enforcement, it cannot be deemed unfair or unconscionable under the Fair Debt Collection Practices Act.

Damages

Defendant argues that plaintiff has failed to establish entitlement to damages. Dkt. #24-8, pp.23-26.

Plaintiff responds that plaintiff has put forth sufficient facts to sustain an award of statutory damages, actual damages and emotional distress. Dkt. #31, pp.19-23.

15 U.S.C. § 1692k provides for actual and statutory damages, plus an award of reasonable attorney's fees. Actual damages are intended to compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and emotional distress resulting from defendant's violation of the FDCPA. *See Annis v. Eastern Asset Management, LLC*, No. 08-CV-458, 2010 WL 1035273 at \*5 (W.D.N.Y. March 18, 2010). "When the emotional distress alleged to have been suffered is the sort that would be experienced by reasonable people under the

circumstances, some damage, even if merely nominal damage, can be presumed." *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp.2d 389, 394 (W.D.N.Y. 2009). "The extent of plaintiff's injury can be proved by plaintiff's testimony alone." *Id.*

As plaintiff's claims that defendant's telephone calls violated the FDCPA cannot be resolved on summary judgment, plaintiff's claim for statutory damages remain viable. Moreover, the allegations before the Court are sufficient, if established at trial, to permit a jury to consider an award of actual damages, including emotional distress.

## **CONCLUSION**

Based on the foregoing, defendant's motion for summary judgment (Dkt. #24), is granted with respect to plaintiff's claim that the restraint of plaintiff's bank account violated 15 U.S.C. § 1692f and denied with respect to plaintiff's claims that the telephone calls to plaintiff violated 15 U.S.C. § 1692d; 15 U.S.C. § 1692e; and 15 U.S.C. § 1692df.

**SO ORDERED.**

DATED:  Buffalo, New York
March 31, 2010

                                           s/ H. Kenneth Schroeder, Jr.
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**